RECEIVED
IN LAKE CHARLES, LA.
JAN 29 2015
TONY R. MOORE, CLERK
BY_____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:05CR20084-04 |
| VS. | : | JUDGE MINALDI |
| EDUARDO RAMOS MENDEZ | : | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Before the court is the defendant's "Motion Under 41(g), or Alternatively, the All Writs Act 28 USC §1651" (Rec. Doc. 1030).[1] The motion is opposed by the Government (Rec. Doc. 1032).

Facts and Procedural History[2]

On May 25, 2005, the grand jury indicted the defendant as well as other co-conspirators in a multi-count indictment. The indictment charged the defendant with various crimes including conspiracy to distribute controlled substances and conspiracy to launder money. The grand jury also alleged that certain money and property were subject to forfeiture under law, one such property named in the indictment was the property Mendez has put at issue in his motion ("205 Los Ranchitos").

With respect to 205 Los Ranchitos, the grand jury alleged that it constituted or was derived from drug proceeds or constituted property used to facilitate the drug trafficking offense (under 21 U.S.C. § 853), additionally, the grand jury alleged that the property was involved in a money

---

[1] Docketed as a Motion for Return of Property/Post-Trial.

[2] As presented by the Government.

laundering offense (under 18 U.S.C. § 982). After the return of the indictment, the government filed a Notice of *Lis Pendens* notifying third parties of the governmental interest in 205 Los Ranchitos.

On March 11, 2008, the grand jury returned a superseding indictment again alleging the same conduct and naming 205 Los Ranchitos subject to forfeiture under 21 U.S.C. § 853 and 18 U.S.C. § 982. (Rec. Doc. No. 572, p.7-13). On January 9, 2009, Mendez pleaded guilty to Count 1 of the superseding indictment (conspiracy to distribute controlled substances). (Rec. Doc. No. 695). In connection with his guilty plea, Mendez and the government entered into a Consent Decree of Forfeiture in which Mendez forfeited his interest in 205 Los Ranchitos and acknowledged that it was a "property constituting, or derived from proceeds the defendants obtained directly or indirectly, as the result of [the drug trafficking crime], and … used or intended to be used in any manner or part to commit or facilitate the commission of [the drug trafficking crime]." (Rec. Doc. No. 696).

Entry of the consent decree of forfeiture allowed the government to begin investigating any other possible legitimate third-party interests in 205 Los Ranchitos. During the investigation, the United States determined that third party interests existed in the property, and for this reason the government, in its motion for a Preliminary Order of Forfeiture, requested that the Court release 205 Los Ranchitos from forfeiture proceedings. (Rec. Doc. No. 875). The Court, on the government's motion, ordered 205 Los Ranchitos released from forfeiture proceedings. (Rec. Doc. No. 878).

On October 6, 2014, Mendez filed a motion seeking the return of 205 Los Ranchitos or its market value – the same property Mendez agreed to forfeit in the Consent Decree of

Forfeiture. In this filing, Mendez alleges that he has a right or interest in 205 Los Ranchitos; however, the government argues that Mendez is incorrect in this assertion. Mendez argues that the government took possession of the property subject to the consent decree and then failed to pay taxes on the property. The parcel was sold at tax sale and despite being released from the motion for forfeiture, the defendant was deprived of his ownership because of the government's inaction.

Law

The government conducted the forfeiture proceedings at issue in this case pursuant to a statute authorizing the government to seek forfeiture of a criminal defendant's assets to the extent that the assets are associated with or derived from criminal activity. 21 U.S.C. § 853(a). After a defendant pleads guilty or is convicted of the alleged crime, the forfeiture process occurs in two stages.

In the first stage, the court enters a preliminary order of forfeiture. *In re American Basketball League, Inc.*, 317 B.R. 121, 126 (Bkrtcy.N.D.Cal., 2004). The preliminary order determines that the specific property covered by the order constitutes an asset subject to forfeiture and **extinguishes the criminal defendant's interest in the property**. (Emphasis added). *Id.* at 121. §853c states that "All right, title and interest in property described in subsection (a) of this section vests in the United States upon commission of the act giving rise to the forfeiture under this section." But, the government does not have clear title to the forfeitable property until the second stage, known as the ancillary proceedings, is completed. *See Id.* at § 853(n). The ancillary proceedings[3] offer due process

---

[3] The requirements for ancillary proceedings are set forth in 21 U.S.C. § 853(n). The government must publish notice of the preliminary order, the government's intent to liquidate the forfeitable assets, and the right of third parties to file claims of interest in the forfeitable assets. *Id.* at § 853(n)(1). Although not required, the government may also provide direct written notice to any third party known to have an alleged interest in the property. *Id.* Within a specified time

protections to innocent third parties that may have an interest in the forfeitable property by providing a forum to adjudicate the validity of their interest.

Once the court disposes of all the third party petitions or the time for filing third-party claims has passed, the government "shall have clear title to the property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." *Id.* at § 853(n)(7). The court gives effect to this statutory mandate by entering a final order of forfeiture. With the entry of this final order all right, title and interest in the forfeited property vests in the United States and relates back to the time of the act giving rise to forfeiture of the property. *Id.* at § 853c

In the instant case, Mendez entered into a plea agreement containing the consent decree of forfeiture. In this document he forfeited the listed properties to the Government. This is the "commission of the act giving rise to the forfeiture" as it pertains to the defendant's interest.

The government then filed a Motion for Preliminary Forfeiture (Rec. Doc. 875), which was granted by Order (Rec. Doc. 878) dated March 31, 2010. The continuing forfeiture proceedings were to ascertain the existence and viability of third party claims against the property. On May 26, 2010 the government filed the Motion to Modify (Rec. Doc. 903) the Preliminary Motion for Forfeiture to exclude the parcel which is the subject of this motion. The Amended Order of Forfeiture (Rec. Doc. 920) was filed June 10, 2010. The Final Judgment of Forfeiture (Rec. Doc. 1012) was filed

---

following receipt of notice by publication or otherwise, any third party asserting a legal interest in the forfeitable property may petition the court for a hearing to adjudicate the validity of the third party's interest. *Id.* at § 853(n)(2). If, after a hearing, the court determines that the third party petitioner had superior title to the property at the time of the "commission of the acts which gave rise to the forfeiture of the property" or is a bona fide purchaser of the property for value who was without cause to believe that the property was subject to forfeiture, the court must amend the forfeiture order to account for that party's interest. *Id.* at § 853(n)(6).

4

October 30, 2012.

It is clear from the statute that Mendez legally conveyed all of his right, title and interest in and to the property at issue when he signed the consent decree of forfeiture.[4] Beyond the consent decree, the statute further states that the preliminary order determines that the specific property covered by the order constitutes an asset subject to forfeiture and extinguishes the criminal defendant's interest in the property. The statute also stipulates that the government may not take title to the property subject to forfeiture until the second is completed. *See Id.* at § 853(n).

The forfeiture statute would still not operate to provide the United States with legal title to 205 Los Ranchitos. Upon the execution of the consent decree, the defendant assigned his interest in the property to the government. Title to real property may "vest" in the United States upon commission of the act giving rise to forfeiture, but vesting is not self-executing. Indeed, under the forfeiture statutes, "nothing vests in the government until some legal step shall be taken for the assertion of its right, after which, for many purposes, the doctrine of relation carries back the title to the commission of the offense." *United States v. Parcel of Land*, 507 U.S. 111, 125, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (quoting *United States v. Grundy*, 3 Cranch 337, 350–51, 2 L.Ed. 459 (1806)). Thus, the United States is required to perfect title by legal action. The initial forfeiture motion originally included the subject parcel, but was then amended to exclude this parcel. Thus,

---

[4] The court notes, however, that this consent decree is no more than the instrument used by the Government to initiate the process of executing the forfeiture to which Mendez had agreed as part of his plea agreement. *Mosley v. U.S.,* 1995 WL 118180, 4 (N.D.N.Y.,1995). The Consent Decree is a settlement voluntarily entered into by both parties, with the advice and assistance of counsel. When "a party makes a conscious and informed choice of litigation strategy, he cannot seek extraordinary relief merely because his assessment of the consequences was incorrect." *In re: Master Key Antitrust Litigation*, 76 F.R.D. at 464.

no judicial action has perfected the title of the United States. *U.S. v. Spahi,* 177 F.3d 748, 753 -754 (9th Cir., 1999).

So, while the defendant's interest was vested in the government, the government did not have clear title to the property and because the motion for forfeiture was amended to exclude this parcel, the government never secured clear title to 205 Los Ranchitos. The defendant argues that, the government's filing of the *lis pendens* and releasing the parcel from the forfeiture constituted a "taking" that deprived him of his rightful use of the property. There is no basis in law for this argument. A *lis pendens* merely informs third parties of a pending action. It is well settled that a notice of *lis pendens* does not constitute a taking under the Fifth Amendment of the United States Constitution. *See Kirby Forest Industries v. United States*, 467 U.S. 1, 15 (1984) (the government's filing of a notice of *lis pendens* did not constitute a taking in a condemnation proceeding).

Mendez claim rests upon his assertion that the government interfered with his "opportunity to enjoy the return of his property." (Rec. Doc. No. 1030, p. 1). He claims that the government should have paid County Taxes that accrued. The government argues that the taxes that accrued against the property are immaterial to resolve Mendez's claims because Mendez's claims rest upon the faulty premise that he was the owner of the 205 Los Ranchitos under the law. The defendant has acknowledged in the Consent Decree of Forfeiture that he was not the lawful owner. The government further argues that, by operation of the relation-back doctrine, the government was the owner of the property during the relevant the time period.

While the government did not have clear title in the property, the property was vested in the government during the applicable period. Mendez did not have a right of enjoyment of the property

because he had surrendered his interest in the consent decree. Mendez claims that he is entitled to a return of the property. The government argues that this position is incorrect but gives not further law in support of their position.

## Conclusion

The property was vested in the government, but the government never secured clear title because of existing third party interests. Still, Mendez has no legal interest in the parcel. It would seem that this parcel was in legal limbo prior to the tax sale. The property was vested in the government by virtue of the consent decree which has never been vacated, although legal title had never been perfected by virtue of the removal of this parcel from the forfeiture proceeding. Therefore, the defendant had no right of enjoyment and no clear right to the return of the property. Accordingly, the defendant's motion will be denied.

Lake Charles, Louisiana, this 23 day of January, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE